

ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

April 5, 2005

The Honorable Robert E. Talton
Chair, Committee on Urban Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0315

Re: Whether a municipality that limits fees for police-initiated nonconsent tows must comply with Transportation Code section 643.204 (RQ-0281-GA)

Dear Representative Talton:

You ask whether a municipality that limits fees for police-initiated nonconsent tows must comply with Transportation Code section 643.204.[1]

Transportation Code section 643.201 defines a "consent tow" as "any tow of a motor vehicle initiated by the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle. The term does not include a tow of a motor vehicle initiated by a peace officer investigating a traffic accident or a traffic incident that involves the vehicle." TEX. TRANSP. CODE ANN. § 643.201(e)(2) (Vernon Supp. 2004-05). A "nonconsent tow" is "any tow of a motor vehicle that is not a consent tow." *Id.* § 643.201(e)(4). Nonconsent tows include police-initiated tows from public property, *see id.* § 643.201(e)(2), (4), city-initiated tows from public property, *see id.* § 684.054 (authorizing a towing company to remove a vehicle from a public roadway at the request of a municipal employee designated by the municipality to make such requests ), and private-party initiated tows from private property, *see, e.g. id.,* § 684.014 (Vernon 1999) (authorizing a towing company to remove a vehicle from a private parking facility at the parking facility owner's request).

The Transportation Code permits a political subdivision's governing body to regulate fees associated with "nonconsent tows" originating in the political subdivision's territory. *See id.* § 643.203 (Vernon Supp. 2004-05). If a political subdivision's governing body chooses to regulate the fees for a nonconsent tow, Transportation Code section 643.204 provides that:

> (a) The governing body of a political subdivision *that regulates* nonconsent tow fees shall establish procedures by which a towing company may request that a towing fee study be performed.

---

[1]*See* Letter from Honorable Robert E. Talton, Chair, Committee on Urban Affairs, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General (Oct. 20, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

> (b) The governing body of the political subdivision shall establish or amend the allowable fees for nonconsent tows at amounts that represent the fair value of the services of a towing company and are reasonably related to any financial or accounting information provided to the governing body.

*Id.* § 643.204 (emphasis added).

You inform us that the City of Victoria ("Victoria") has an ordinance pertaining to police-initiated nonconsent tows in its territory. *See* Request Letter, *supra* note 1, at 1 and attachment A.[2] Specifically, the Victoria ordinance reads:

> (a) All tow truck permit holders operating permitted tow trucks on the public streets shall charge no more than the storage rates prescribed by the Texas Department of Transportation for performing nonconsent tows. A charge for any storage service exceeding the rates prescribed or in addition to the storage related services prescribed shall constitute a violation of this article.

> (b) The city manager may establish further rate limits in the city's contracts with rotation list privilege holders. These rate limits shall not be considered rate regulations, but shall instead be considered contractual obligations pursuant to the city's provision of referrals to contractees. Failure to comply with any such contractual rate limits shall not be punishable as a violation of this ordinance, but shall instead merely give the city the right to declare a breach of contract and potentially terminate said contract.

VICTORIA, TX., CODE OF ORDINANCES sec. 23-75 Rates.

You further inform us that the Texas Towing and Storage Association considers the ordinance to be a regulation of nonconsent tow fees but notes that Victoria has not established procedures by which a towing company may request a towing fee study be performed. *See* Request Letter, *supra* note 1, at 1 and attachment B.[3] You agree with the association's assessment that the ordinance is regulating nonconsent tow fees and question whether Victoria is impermissibly ignoring its statutory duty. *See* Request Letter, *supra* note 1, at 1. Particularly, you ask "whether a city can bypass the clear intent of [section 643.204] by refusing to set procedures even though [it has] set fees for nonconsent tows." *Id.*

---

[2]VICTORIA, TX., CODE OF ORDINANCES sec. 23-75 Rates.

[3]*See* Letter from Larry Cernosek, Chairman, Texas Towing and Storage Association, to Will Armstrong, Mayor, and Denny Arnold, City Manager, City of Victoria (June 16, 2004).

In answer to your broader question, without reference to a specific city, we note that Texas cities, be they general-law or home-rule cities, are required to comply with state law. *See* TEX. CONST. art. XI, §§ 4, 5. Thus, a city must follow the plain language of section 643.204, if the city regulates nonconsent towing fees in its territory. *See* TEX. TRANSP. CODE ANN. § 643.204 (Vernon Supp. 2004-05).

We assume, however, that your question, though broad in scope, refers to the more specific circumstances of Victoria's ordinance. In Victoria's case, we must determine as a threshold matter whether the city regulates nonconsent tow fees.

Here we observe that the legislature has not defined the term "regulate" as it is used in Transportation Code chapter 643. *See id.* §§ 643.002-.254 (Vernon 1999 & Supp. 2004-05). In a bill analysis for House Bill 849, which enacted the section construed in this opinion, the legislature discussed regulation in the federal context and apparently designed these sections to address federal law. *See* HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 849, 78th Leg., R.S. (2003) at 2 ("The U.S. Supreme Court has upheld local government regulation of the towing industry in the wake of federal deregulation."); *see also* 49 U.S.C. § 14501(c)(2)(C) (2000) (granting a limited exemption to a state or its political subdivisions from the federally preempted regulation of the towing industry by permitting a state or its political subdivisions to regulate nonconsent tow fees). Moreover, Transportation Code section 643.201 permits political subdivisions in Texas to "regulate the operation of a tow truck *to the extent allowed by federal law . . . .*" TEX. TRANSP. CODE ANN. § 643.201(a) (Vernon 2004-05) (emphasis added). Accordingly, we look to federal law concerning the towing industry to determine the meaning of "regulate" and whether Victoria regulates nonconsent tow fees.

Federal law recognizes a distinction between towing regulation and actions a governmental body takes in a proprietary capacity. *See Cardinal Towing & Auto Repair, Inc., v. City of Bedford, Tex.*, 180 F.3d 686, 691 (5th Cir. 1999). A state or municipality acting as a market participant "in a narrow and focused manner consistent with the behavior of other market participants" is not regulating the towing market. *Id.* (citing *Bldg. and Constr. Trades Council v. Associated Builders & Contractors, Inc.*, 507 U.S. 218, 227 (1993)). Consequently, when called upon to determine if an ordinance such as Victoria's ordinance constitutes the regulation of towing, the federal courts have resolved it by answering two questions:

> First, does the challenged action essentially reflect the entity's own interest in its efficient procurement of needed goods and services, as measured by comparison with the typical behavior of private parties in similar circumstances? Second, does the narrow scope of the challenged action defeat an inference that its primary goal was to encourage a general policy rather than address a specific proprietary problem?

*Id.* at 693.

In *Cardinal Towing*, in the context of analyzing a municipal towing ordinance, the Fifth Circuit answered these two questions in the affirmative. *See id.* In that case, the court was presented with a city ordinance that required the City of Bedford to contract only with one towing company to meet Bedford's police-initiated nonconsent towing needs. *See id.* at 688-89. The court observed that because of the "odd structure of the towing industry," nonconsent tows do not provide an opportunity for the vehicle's owner to participate in negotiating the towing contract. *See id.* at 696. Rather, "the real decision is made by the party who ordered the tow, who chooses both to remove the vehicle and the party to perform the service." *Id.*[4] Accordingly, the court found that Bedford's ordinance was not a towing regulation because Bedford was merely creating efficiencies for itself by way of an ordinance that controlled the small arena of police-initiated nonconsent tows. *Id.* at 694-95.

In a similar case, the Fifth Circuit answered the same questions and found San Antonio's towing ordinances, which prohibited all towing companies from performing any type of tow unless under contract with the city, to be regulations. *See Stucky v. City of San Antonio*, 260 F.3d 424 (5th Cir. 2001), *rev'd and remanded on other grounds*, 536 U.S. 936 (2002). There the court reasoned that San Antonio's ordinances controlled so broadly the towing market that it had the direct effect of reducing the market's size. *See id.* at 436. "This effect [did] not speak to a private proprietary purchase, but rather to a public regulatory plan." *Id.* Furthermore, this effect, coupled with the court's finding that San Antonio expressly considered its ordinances to be regulations, gave the court sufficient proof to conclude that San Antonio's interaction with the market was not so narrowly focused that it could safely rule out the city's regulatory impulse. *See id.* at 438-39 (citing *Cardinal Towing*, 180 F.3d at 693).

Here, under the ordinance, a towing company is limited to the fee maximum only when a driver is arrested, has been involved in an accident, or has an otherwise disabled vehicle and fails or refuses to designate a tow truck company to move the driver's vehicle from public property.[5] In

---

[4]The *Cardinal Towing* court elaborated:

> Because the owner of the vehicle will by necessity be unable to choose a towing company in nonconsent situations, the only party that can make the type of merit selection inherent in market transactions is the party ordering the tow. In the situations addressed by [Bedford's] ordinance, that party is the City, and by its choosing the company best able to guarantee fast, reliable towing service, the City exemplifies the market forces Congress sought to encourage.

*Cardinal Towing*, 180 F.3d at 695.

[5]*See* Brief from Miles K. Risley, Senior Assistant City Attorney, City of Victoria, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General, at 3 (Nov. 15, 2004) (on file with Opinion Committee) [hereinafter City Brief] (citing VICTORIA, TX., CODE OF ORDINANCES sec. 23-65(a)). Sec. 23-65(a) reads:

> When a vehicle which has been involved in a collision or accident, or which is otherwise disabled, is unable to proceed safely, or when a driver of a vehicle is physically unable to drive such vehicle, or when a police officer arrests the driver of a vehicle and determines that the vehicle is to be

(continued...)

such a police-initiated nonconsent tow situation, the police officer investigating the incident is required to relay this information to the police communications officer on duty, who in turn is required to select from a list of towing companies that have contracted with the city to perform police-initiated nonconsent tows. *See* VICTORIA, TX., CODE OF ORDINANCES sec. 23-65(a); City Brief, *supra* note 5, at 3. However, Victoria does not require the use of any particular towing company for private matters. *See* City Brief, *supra* note 5, at 2-3. A towing company that performs nonconsent tows from private property is not required to contract with Victoria and therefore is not subject to a fee limitation. *See id.*

Victoria's ordinance resembles the ordinance at issue in *Cardinal Towing*. Victoria clearly limits its ordinance to control police-initiated nonconsent tows to create efficiencies for itself. In addition, the narrow scope of its ordinance, which appears to control only a portion of the nonconsent tow market, defeats the inference that its primary goal is to encourage a general policy rather than address a specific proprietary problem. Moreover, Victoria expressly considers its police-initiated nonconsent tow rate limits to be elements of a contract between itself and a towing privilege holder. *See* Request Letter, *supra* note 1, at attachment A ("These rate limits shall not be considered rate regulations, but shall be considered contractual obligations pursuant to the city's provision of referrals to contractees." VICTORIA, TX., CODE OF ORDINANCES sec. 23-75(b) Rates).

However, *Cardinal Towing* was concerned with an ordinance that controlled a small portion of the towing market and the regulatory effect such an ordinance had on a city's whole towing market, which included a large set of market behaviors. But the Texas legislature is concerned with ordinances that have a regulatory effect only on the nonconsent towing market, which includes a smaller set of market behaviors relative to the entire towing industry. *See* TEX. TRANSP. CODE ANN. § 643.204(a) (Vernon Supp. 2004-05) ("The governing body of a political subdivision that regulates *nonconsent tow fees* . . . .") (emphasis added). As such, we take heed of the Fifth Circuit's caveat in *Cardinal Towing* that in determining an ordinance's nature, general analysis yields to special circumstances. *See Cardinal Towing*, 180 F.3d at 696 n.5. Specifically, the *Cardinal Towing* court said:

> Cardinal has failed to argue or allege that the structure of
> Bedford towing industry involves special circumstances justifying

---

[5](...continued)
impounded, the police officer investigating such incident or making such arrest shall request the driver of such vehicle to designate a tow truck operator which the driver desires to remove such vehicle. When the driver has so designated the tow truck operator, the police officer shall communicate that fact immediately to the police communications officer on duty, and it shall be the duty of such communications officer to call the designated tow truck operator to send a tow truck to the scene or site of the incident or arrest. In the event such driver is physically unable to designate a tow truck operator, or refuses to designate one, the police officer investigating such incident or making such arrest shall notify the police communications office of such fact, and the communications officer shall select a privilege holder and call the privilege holder to send a tow truck to the scene or site of such incident or arrest.

VICTORIA, TX., CODE OF ORDINANCES sec. 23-65(a).

deviation from our general analysis.  There may be municipalities in which police tows constitute such an overwhelming portion of the industry that failure to share in the municipality's business forecloses effective competition in other segments of the industry.

*Id.*

Nevertheless, neither the request letter nor the Texas Towing and Storage Association have provided us with any facts that suggest there are special circumstances in Victoria that would require something more than *Cardinal Towing*'s general analysis.  *See* Request Letter, *supra* note 1, at 1 and attachment B.[6]  Under this general analysis, we do not believe Victoria is regulating the nonconsent tow market, and neither, therefore, do we believe it is impermissibly ignoring section 643.204.

---

[6]*See also* Brief from Larry Cernosek, Chairman, Texas Towing and Storage Association, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General (Nov. 19, 2004) (on file with Opinion Committee).

## S U M M A R Y

Transportation Code section 643.204 requires a municipality that regulates nonconsent tow fees to establish a procedure by which a towing company may request that a towing fee study be performed. The City of Victoria, Code of Ordinances section 23-75 limits the maximum fee that a towing company can assess for police-initiated nonconsent tows. The City of Victoria's ordinance does not appear to regulate nonconsent tow fees. The ordinance is designed to create efficiencies for the city, and its narrow scope, which controls only a portion of the nonconsent tow market, defeats the inference that its primary goal is to encourage a general policy rather than address a specific proprietary problem. Thus, Victoria is not impermissibly ignoring Transportation Code section 643.204.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee